**Amanda Melane MOSS, Individually and for other heirs-at-law of the Estate of Linda A. Fincham, deceased, Plaintiffs–Appellants,**

v.

**Seeley FELDMEYER, M.D., Defendant–Appellee,**

and

**Meade District Hospital, a corporation, Defendant.**

No. 91–3155.

United States Court of Appeals, Tenth Circuit.

Nov. 19, 1992.

---

Richard D. Cordry of Cordry & Hartman, Wichita, Kan., for plaintiffs-appellants.

Kenneth E. Peirce of Reynolds, Peirce, Forker, Suter & Rose, Hutchinson, Kan., for defendant-appellee.

Before LOGAN, LAY * and BARRETT, Circuit Judges.

* The Honorable Donald P. Lay, Senior Judge, United States Circuit Court of Appeals for the Eighth Circuit, sitting by designation.

BARRETT, Senior Circuit Judge.

Amanda Melane Moss (Moss), individually, and on behalf of the heirs of the estate of her mother, Linda Fincham (Fincham), appeals from an order of the district court denying her motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. A summary of the relevant facts and litigative history will facilitate our review.

On June 29, 1988, Fincham, then forty-six years old and a long-term smoker, went to a hospital emergency room. Fincham related that she was experiencing breathlessness, numbness in her left arm, a shaky feeling, and chest pain. She was seen by Seeley Feldmeyer, M.D. (Feldmeyer) who diagnosed her as having an anxiety attack and treated her with medication. Fincham then went home.

Fincham returned to the emergency room at midnight on July 1, 1988, again complaining of chest pains, anxieties, and other symptoms. Feldmeyer did not see her, but he did, by voice order, prescribe additional medication and release her to go home. Fincham returned to the emergency room at 10:15 p.m. on July 2, 1988, at which time she was seen but not examined by Feldmeyer who prescribed medication.

Approximately forty-five minutes later, Fincham returned to the hospital parking lot in a pickup truck. While in the pickup, she was given a shot of valium and sent home. Fincham died during the early morning hours the next day at her home.

An autopsy was performed on Fincham by a Dr. Ayuthia at the request of Feldmeyer. Dr. Ayuthia's autopsy report set forth Fincham's cause of death as cardiac arrhythmia secondary to hyperacute myocardial infarction.

Moss subsequently filed a complaint against Feldmeyer, contending that he had departed from standard approved medical practice by failing to hospitalize Fincham from June 29, 1988, to July 2, 1988, and asserting that Fincham, in all probability, would have survived with proper treatment.

A status conference was held before the district court on January 4, 1990, and trial was set for September 11, 1990. Another status conference was held on April 27, 1990, at which time the court moved the trial date to October 9, 1990.

On August 10, 1990, a pretrial order was entered. Feldmeyer listed David DeJong, M.D. as a witness and Dennis Kepka, M.D. and Roger Evans, M.D. as expert witnesses. The order provided that a "list of all exhibits, not described herein, to be used by any party and a list of all witnesses, not named herein, to be called by either party, shall be filed ... not later than October 5, 1990." (Appellants' Appendices, Vol. I, Tab 5, p. 27).

On August 23, 1990, Feldmeyer submitted Dr. Evans' report to Moss. Within his report, Dr. Evans stated that "[t]hese combined factors of extreme stress, use of amphetamines, and her silent coronary disease, coupled with her refusal to be admitted for observation probably lead her to experience a silent infarction and death at home." (Appellants' Appendices, Vol. III, Tab 43, p. 10). Moss did not depose Dr. Evans.

On September 24, 1990, Feldmeyer notified Moss that he intended to call Dr. DeJong, a pathologist, as an expert witness. Moss was supplied with Dr. DeJong's report on September 28, 1990. Within his report, Dr. DeJong indicated that he could not determine what caused Fincham's arrhythmia and that it was not necessarily myocardial infarction as previously found by Dr. Ayuthia and as reported by Feldmeyer on Fincham's death certificate.

Moss objected to Dr. DeJong's testimony on the basis that: the time to identify expert witnesses had long since expired; Dr. DeJong was named outside the time permitted by the pretrial order; the naming of Dr. DeJong as an additional expert witness who would introduce a completely new issue in the case would cause her unfair prejudice and surprise. A hearing was conducted on October 4, 1990, following which the court ruled that Dr. DeJong would not be permitted to testify.

Prior to trial on October 9, 1990, the court conducted an in camera hearing to consider a new, amended report tendered by Dr. Evans and to reconsider whether Dr. DeJong should testify. During the hearing, counsel for Feldmeyer related that after the court had ruled that Dr. DeJong could not testify, he [counsel] had taken the autopsy pathology slides to Dr. Evans who had then prepared a new, amended report. Counsel argued that "[w]e want to add those [photographs of the pathology slides] as exhibits for either Dr. DeJong, if he would be allowed to testify, or Dr. Evans to interpret for the jury what was being said and done at the autopsy." (Appellants' Appendices, Vol. IV, Tab 49, p. 57).

Counsel for Moss objected, voicing surprise that although Dr. Evans was a cardiologist, Feldmeyer now wanted to "make" him a pathologist. Counsel argued that:

I'm going to object to counsel using Dr. Evans now as a pathologist with a new amended report. He furnished a report timely of Dr. Evans, and I didn't take Dr. Evans' deposition. Now Dr. Evans is going to be a pathologist. I haven't got through that report yet, and I guess I may be premature in my objection until he presents him and wants to use him. But I want to talk about Dr. DeJong because he was not listed as an expert witness. If he was going to use him as an expert witness, he could have listed him as an expert and could have told you: Look, I'm waiting for a report. Give me some time. I want to use him. But, no, he waits until a week before trial and now he wants to use Dr. DeJong....

(Appellants' Appendices, Vol. IV, Tab 49, pp. 60–61).

Thereafter, the court ruled:

Well ... I conditioned my own policies about discovery in late hours, the first thing is to quest to find out the facts that give rise to an event, and if they are available, the jury ought to hear them and we ought to be able to do it without prejudice to either side, but oft times it means we have to do it at a late hour to advise each side where we are going, which means it is not uncommon for me to permit discovery, even in the course of trial, or in the afternoon before a witness comes on, or in an evening hour, or on a weekend or whenever, when I'm dealing with good lawyers who know the subject and are sensitive to the issues and can inquire satisfactorily as to the sufficiency of testimony so they are not surprised. This is where I am.

I got into this and came to realize that at least Dr. DeJong had been named. I doubt if you can list a witness and not identify at least some reason for having listed him. It satisfies my own conviction that [Feldmeyer's counsel] has always had this man in mind, and was a belated finding, and I'm going to modify my suggestion of Thursday that would have totally precluded him. I'm going to permit you now to use him, but before you use him, or if Dr. Evans is not going to expand beyond the field of cardiology, that both witnesses stand ready for the plaintiffs to discover them. And if you're going to use them, say, the first part of next week, then the latter part of this week will be available for that purpose. Can we do that?

Mr. Pierce [counsel for Feldmeyer]: Yes, Your honor.

(Appellants' Appendices, Vol. IV, Tab 49, pp. 62–63).

Moss did not comment upon the court's ruling that Drs. Evans and DeJong could testify provided that both would be "stand[ing] ready for the plaintiffs to discover them." Nor did Moss ask for a continuance or lodge any type of objection indicating that she would be prejudiced as a result of the court's ruling. Thereafter, although Moss deposed Dr. DeJong, she declined to depose Dr. Evans.

Moss' case was predicated on the theory that: Fincham had died from a myocardial infarction as set forth in the autopsy report; the myocardial infarction could have been, most probably, successfully treated by Feldmeyer with a proper diagnosis; and Feldmeyer's misdiagnosis led to Fincham's death. Dr. Francisco, a well-qualified car-

diologist, after having been provided with the history of Fincham's visits to the hospital and having accepted the autopsy findings as true, attributed Fincham's death to Feldmeyer's negligence.

Feldmeyer defended on the basis that: he had not been negligent in treating Fincham; Fincham, notwithstanding the autopsy findings of a myocardial infarction, did not exhibit the signs which signal the likelihood of an infarction; Fincham had a history of using prescription and non-prescription drugs; and he had insisted that Fincham be admitted to the hospital for observation and care, but she had refused. Feldmeyer's testimony included his telephone discussions with Fincham's husband encouraging him to bring Fincham to the hospital during which he (Feldmeyer) had heard Fincham indicate in the background that she did not want to go to the hospital.

Dr. DeJong testified that he could not definitely state what Fincham died of but that he believed, based on the evidence, "that the most likely cause of her death was myocarditis." (Appellee's Addendum, Vol. I, Tab 2, p. 1033). Dr. DeJong also testified that he believed, to a reasonable degree of medical probability, that Fincham had amphetamines in her system at the time of her death. *Id.*, pp. 982–83.

Dr. Evans testified that: he could not state with reasonable medical probability what caused Fincham's death; assuming that Fincham's brain was okay, she more likely than not had a rhythm disturbance; and the rhythm disturbance could have been caused by a narrowing of the arteries, a virus infection [myocarditis], or stress. (Appellee's Addendum, Vol. II, pp. 1248–52). Dr. Evans further testified, "I don't believe he [Feldmeyer] did anything that caused her [Fincham's] death or contributed to her death." *Id.*, p. 1259.

Both Drs. DeJong and Evans were subjected to lengthy and vigorous cross-examination.

The special interrogatories to the jury included question No. 1, objected to by Moss:

Do you find that cardiac arrhythmia secoundary [sic] to hyperacute myocardial infarction was the likely cause of Linda Fincham's death?

Yes___ No___

[If your answer to No. 1 is "no", have your foreperson sign and date this verdict form and notify my clerk that you have completed your deliberations. If you answer "yes" to No. 1, proceed to the following questions.]

(Appellants' Appendices, Vol. I, Tab 25, p. 1).

After the jury answered "no," Moss moved for judgment notwithstanding the verdict or, in the alternative, for a new trial. Moss alleged that the court abused its discretion by: allowing Feldmeyer to amend the pretrial order on the day of trial by naming Dr. DeJong as an additional expert witness and allowing the expansion of the testimony of Feldmeyer's previously declared expert, Dr. Evans; admitting evidence of the presence of amphetamines in Fincham; permitting Feldmeyer to testify relative to hearsay testimony of Fincham to her husband; requiring the jury to answer special interrogatory No. 1 in the affirmative in order to find for Moss. The court entered a detailed order rejecting each allegation and overruling Moss' motion.

On appeal, Moss contends that the court abused its discretion in: (1) allowing Feldmeyer to add Dr. DeJong as an expert and to expand Dr. Evans' testimony; (2) admitting evidence of Fincham's alleged abuse of prescription and non-prescription drugs; and (3), allowing Feldmeyer to give hearsay testimony concerning his conversations with Fincham and her husband.

## I.

Moss contends that the district court abused its discretion and denied her a fair trial by permitting Feldmeyer to add Dr. DeJong as an expert witness and by allowing him to expand the expert testimony of Dr. Evans on the morning of the trial.

### a.

 The decision to allow or prohibit testimony of witnesses not described or

listed in the pretrial order rests with the sound discretion of the trial judge and will not be disturbed absent an abuse of discretion. *Perry v. Winspur,* 782 F.2d 893, 894 (10th Cir.1986); *Lentsch v. Marshall,* 741 F.2d 301, 306 (10th Cir.1984). The order entered following a final pretrial conference shall be modified only to prevent manifest injustice. Fed.R.Civ.P. Rule 16(e), 28 U.S.C.

Moss contends that the actions of the district court in allowing Dr. DeJong to testify as an expert witness and in allowing Dr. Evans to expand his testimony were in direct violation of *Smith v. Ford Motor Company,* 626 F.2d 784 (10th Cir.1980), *cert. denied,* 450 U.S. 918, 101 S.Ct. 1363, 67 L.Ed.2d 344 (1981). Moss argues that the order of the district court overruling her motion for judgment notwithstanding the verdict, or alternatively, for a new trial, should be reversed and the case remanded for a new trial.

In *Smith,* we reversed and remanded a personal injury action for a new trial, holding that the district court had abused its discretion by allowing a medical doctor, who had been designated in the pretrial order as an expert witness to testify about the plaintiff's treatment and prognosis, to testify relative to the proximate causation between the automobile lap belts employed and the injuries incurred by the plaintiff. In *Smith,* quoting *Meyers v. Pennypack Woods Home Ownership Ass'n,* 559 F.2d 894, 904–05 (3rd Cir.1977), we set forth the factors to be considered in determining whether a district court has abused its discretion:

> (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or other cases in court, and (4) bad faith or willfulness in failing to comply with the court's order.

626 F.2d at 797.

Applying these factors in *Smith,* we held: Ford was prejudiced and surprised by the plaintiff's failure to accurately set forth in the pretrial order, as required by the local rules, a brief description of the expert's testimony, i.e., that the plaintiff's injuries were not only caused by a seatbelt, but by a defective seatbelt; Ford's ability to cure the prejudice created by the challenged testimony was significantly impaired since the expert was leaving the next day and Ford was allowed only eleven minutes to prepare for cross-examination; an adjournment for depositions, considered in light of the subject matter of the challenged testimony and the expert's other scheduled appointments, would have resulted in a significant disruption of the trial; and bad faith could not be considered inasmuch as the district court did not make any findings in that regard. *Smith* is distinguishable from our case.

■ First, Moss was not prejudiced or surprised in fact by Drs. DeJong's and Evans' testimony inasmuch as: both doctors were designated as witnesses in the pretrial order; Dr. DeJong was designated as an expert more than two weeks before the trial; Moss received a summary of both doctors' reports prior to their trial testimony; both doctors were available for discovery prior to testifying; and Moss, at her option, deposed Dr. DeJong but did not depose Dr. Evans.

Second, whereas Ford had only eleven minutes to prepare for cross-examination, Moss had over two weeks to prepare for Dr. DeJong's cross-examination and eight days to prepare for Dr. Evans' cross-examination, during which time, in each instance, Moss had their respective reports. Under these circumstances, we hold that Moss' ability to cure was not significantly impaired.

Third, whereas the challenged testimony objected to in *Smith* was first revealed in the midst of the trial, so that an adjournment for depositions would have resulted in a significant disruption of the trial, Drs. DeJong and Evans and their respective reports were made available to Moss prior to their testimony. No disruption of the trial was threatened here.

Finally, we reject Moss' argument that there was evidence of bad faith surrounding the development and presentation of Drs. DeJong's and Evans' testimony. We agree that the district court was "dealing with good lawyers who know the subject and are sensitive to the issues and can inquire satisfactorily as to the sufficiency of testimony so they are not surprised." (Appellants' Appendices, Vol. IV, Tab 49, pp. 62–62).

#### b.

■ Moss contends that the court compounded the prejudice she suffered from Drs. DeJong's and Evans' testimony by presenting special interrogatory No. 1, "[d]o you find that cardiac arrhythmia secondary to hyperacute myocardial infarction was the likely cause of Linda Fincham's death? Yes____ No____." Moss argues that requiring an affirmative answer to this interrogatory guaranteed that she would suffer prejudice.

We hold that Moss was not prejudiced by interrogatory No. 1, inasmuch as Moss's case was predicated on the fact that Fincham had died from a myocardial infarction which Feldmeyer had misdiagnosed. Moreover, counsel for Moss effectively argued during cross-examination of Dr. Evans that Fincham had died from *either* a myocardial infarction or myocarditis, thus eliminating other possible causes of death, such as stress.

Q. [Counsel for Moss]: ... Wouldn't you agree that it is more probably likely ... that she didn't die of the stress, but either died of myocarditis or died of a myocardial infarction ...?

A. [Dr. Evans]: Say that question again.

Q. Wouldn't you agree with me given the circumstances that I gave you, that it is more likely that she died, according to you, of either myocarditis or myocardial infarction, right? You would agree that those are more probably true of the likely cause than stress correct?

A. Right, or stress—she was still having stress, but the stress can be the trigger.

Q. All right.

A. But it wasn't occurring at that moment, apparently, from the description, yes, sir.

(Appellee's Addendum, Vol. II, Tab 3, p. 1344).

Under these circumstances, we hold that interrogatory No. 1 was properly submitted to the jury.

### II.

■ Moss contends that the court abused its discretion in admitting evidence relating to Fincham's alleged abuse of prescription and non-prescription drugs. We disagree.

Dr. Ayuthia performed an autopsy on Fincham which was reviewed and relied upon by both parties. In conjunction with the autopsy, Dr. Ayuthia requested and received a laboratory analysis of Fincham's blood and urine from the Kansas Bureau of Investigation. The Bureau's report related that "[t]he urine screen was positive (via immunoassay) for Amphetamine/Methamphetamine but was not confirmed."

Prior to allowing Dr. DeJong to comment on the Bureau's report, the court voir dired him in camera:

The Court: ... There was a suggestion of the presence of amphetamines.... The mere mention of amphetamines could well prejudice the jury. I cautioned the defendant that I would expect him to come forward with some evidence which would say reasonably so that given inspection of the tests available in this case this person probably had amphetamines in her system at the time of her death. And the only question I want to know from you sir, yes or no, is that your testimony.

A. [Dr. DeJong]: To the best of my knowledge she had such a level of substances at the time she died that I think she probably had an amphetamines class in her body.

\* \* \* \* \* \*

The Court: ... I want to know from a pathologist's standpoint if this lady at the time of her death probably had in her

system amphetamines or methamphetamines. Yes or no.

A. Yes, I think that is the most likely interpretation of this set of data.

The Court: All right. Very well. You can testify in the morning....

(Appellee's Addendum, Vol. I, pp. 978–79).

Thereafter, Dr. DeJong testified in open court that "it would take a very high level of the medication she was taking to influence the test, and therefore still the more likely would be that it was an amphetamine or one of the amphetamine group." *Id.*, p. 983.

We hold that the court did not abuse its discretion in admitting this testimony. *See Sil–Flo, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1517 (10th Cir.1990) (We review the district court's ruling admitting expert testimony under the abuse of discretion standard; the court's ruling cannot be overturned unless it is manifestly erroneous). Moss, having relied on Dr. Ayuthia's autopsy to support her argument that Fincham had died from a myocardial infarction which Feldmeyer had misdiagnosed, cannot now challenge Dr. DeJong's testimony predicated on an impartial laboratory report prepared in conjunction with the autopsy upon which she relied. Moreover, the amphetamine evidence was relevant to the cause of death, inasmuch as Dr. Evans concluded that the use of amphetamines was one of the factors which lead Feldmeyer to experience a silent infarction and death at home.

### III.

Moss contends that the district court abused its discretion in allowing Feldmeyer to testify concerning his conversations with Fincham and her husband.

Feldmeyer testified, *inter alia*, that: he encouraged Fincham to enter the hospital on June 29, 1988, but she refused, stating "no, no, no, no. I don't need that." (Appellee's Addendum, Volume III, Tab 4, p. 786); he offered to hospitalize her when she returned to the hospital several days later but she again declined hospitalization, indicating that she just wanted to go home and sleep, *id.*, p. 801; immediately prior to Fincham's return to the hospital accompa-

nied by her husband at 11:30 p.m. on July 2, 1988, Fincham's husband called him on the telephone, *id.*, pp. 802; during their conversation he (Feldmeyer) related to Fincham's husband that he wanted to hospitalize Fincham, *id.;* after Fincham's husband related that Feldmeyer wanted her to go into the hospital, he (Feldmeyer) heard her reply "in a tone that was somewhat petulant and agitated ... no, I don't need that." *Id.*, pp. 802–03.

Moss did not object to this testimony during trial. Rather, she challenged it for the first time in her motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. In determining that the testimony had been properly admitted, the court found:

Plaintiff complains that the court abused its discretion by permitting hearsay testimony allegedly from the decedent and her mentally incompetent husband. Again ... this case involved much hearsay, none of which was objected to by either side. By example, one of plaintiff's best arguments came through decedent's daughter's testimony that her mother said to her, "I thought I was having a heart attack, but the doctor thought differently."

The important point here ... is that this case deals with a physician's care and treatment of a patient as addressed in Fed.R.Evid. 803(3). Matters related to the physician's history, findings from examinations, and the treatment of the patient give rise to her responses and his advice. Here the defendant related his findings and that is not hearsay. More importantly, given the findings, he said to her, "Stay in the hospital." This statement was admitted for the jury to believe or disbelieve.

Presently the plaintiff complains with regard to certain statements and communications between defendant and decedent's husband on the eve of Mrs. Fincham's death. During a phone conference to decedent's home, defendant admonished the husband to bring his wife back to the hospital. Defendant's voice can be heard in the background saying, "I don't want to come."

The record is silent as to objections. Even so the court would have permitted the testimony as it is a continuum of the physician/patient relationship for the jury to weigh. The statements of Mrs. Fincham clearly constitute admissible hearsay statements under both Fed. R.Evid. 803(3) as a statement of her then existing mental condition, and under 803(4) as a statement made to a physician for purposes of treatment.

(Appellants' Appendices, Vol. II, Tab 33, pp. 10–11).

■ We review de novo a district court's decision not to grant a motion for judgment notwithstanding the verdict. *First Security Bank of Beaver, Oklahoma v. Taylor*, 964 F.2d 1053, 1055 (10th Cir. 1992). In so doing, we view the evidence in the light most favorable to the non-moving party. *Id.* A motion for new trial, on the other hand, is addressed to the sound discretion of the trial court and the granting or denial of such a motion will not be disturbed on appeal except for manifest abuse of discretion. *Canady v. J.B. Hunt Transport, Inc.*, 970 F.2d 710, 716 (10th Cir.1992). Applying these standards, we hold that the district court did not err in denying Moss' motion for judgment notwithstanding the verdict, or in the alternative, for a new trial.

■ Moss' case was predicated on the theory that Feldmeyer was negligent in his treatment and care of patient Fincham, and that, but for Feldmeyer's negligence, Fincham would have, in all probability, survived. We agree with the district court that under these circumstances, the challenged testimony was a continuum of the physician/patient relationship and admissible under both Fed.R.Evid. 803(3) and (4).[1]

AFFIRMED.

---

1. Rule 803 provides:
 The following are not excluded by the hearsay rule ...:

 \* \* \* \* \* \*

 (3) ... A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as ... mental feeling, pain, and bodily health)....

 (4) ... Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations....