**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 10, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

AUSTIN MONFORE, individually and
as surviving child of Sherman W.
Shatwell, deceased,

      Plaintiff-Appellee,

v.

KENNETH EDWARD PHILLIPS,
D.O.; TAHLEQUAH EMERGENCY
CONSULTANTS, PLLC,

      Defendants-Appellants,

and

JUDITH WOLFSTEIN, M.D.;
DIAGNOSTIC IMAGING
ASSOCIATES, INC.,

      Defendants.

No. 13-7075

---

**Appeal from the United States District Court**
**for the Eastern District of Oklahoma**
**(D.C. No. 6:11-CV-00343-JHP)**

---

Donald H. Ziegler, III, of Hudson, Potts & Bernstein, LLP, Monroe, Louisiana
(Jay Adams of Hudson, Potts & Bernstein, LLP, Monroe, Louisiana, and Bob L.
Latham, S. Lance Freije, and Lindsey E. Albers of Latham, Wagner, Steele &
Lehman, P.C., Tulsa, Oklahoma, with him on the briefs), for Defendants-
Appellants.

Timothy A. Hootman of Houston, Texas (Glendell Nix of Nix Law Group, PLLC, Edmond, Oklahoma, with him on the brief), for Plaintiff-Appellee.

Before **GORSUCH**, **MURPHY**, and **MORITZ**, Circuit Judges.

**GORSUCH**, Circuit Judge.

Sherman Shatwell went to the hospital complaining of neck pain. Tests showed he probably had throat cancer. It was treatable but required immediate attention. Thanks to a variety of bureaucratic blunders the news never made it to him. Instead, Mr. Shatwell was sent home with a prescription for antibiotics. By the time he learned the truth a year later, it was too late.

Eventually, his widowed wife pursued negligence claims against the doctors and hospital. Through twenty months of motions practice and discovery and all the way through their submissions for the final pretrial order the defendants maintained a unified front, denying any negligence by anyone. Then, two weeks before trial, some of the defendants settled. Dr. Kenneth Phillips wasn't one of those. Left to stand trial and with just days before jury selection, he sought permission to amend the pretrial order so he could revamp his trial strategy. Now he wanted to pursue a defense pinning the blame on the absent settling defendants, arguing that they were indeed negligent and that they — not he — should be held responsible for any damages. Dr. Phillips's motion to amend the final pretrial order sought permission to introduce new jury

instructions, exhibits, and witnesses aimed at advancing this new defense. But the district court denied the motion and at the trial's end the jury found him liable for damages of a little over $1 million. Dr. Phillips now asks us to overturn the judgment, contending that the district court's refusal to amend the final pretrial order and allow his new defense amounts to reversible error.[1]

Final pretrial orders seek to "formulate a trial plan." Fed. R. Civ. P. 16(e). In their complaints and answers lawyers and parties today often list every alternative and contradictory claim or defense known to the law; during discovery they sometimes depose every potential witness still breathing and collect every bit and byte of evidence technology, time, and money will allow. Final pretrial orders seek to tame such exuberant modern pretrial practices and focus the mind on the impending reality of trial. "The casual pleading [and discovery] indulged by the courts under the Federal Rules . . . has quite naturally led to" — some might say required — "more and more emphasis on pre-trial hearings and statements to define the issues" for trial. *Meadow Gold Prods. Co. v. Wright*, 278 F.2d 867, 868-69 (D.C. Cir. 1960). Leaving the reins so loose at the front end of the case requires some method of gathering them up as the end approaches. At trial you just can't argue every contradictory and mutually exclusive claim or defense you were able to conjure in your pleadings: juries would lose faith in

---

[1] Technically, the judgment lies against Dr. Phillips and his employer, Tahlequah Emergency Consultants, PLLC, but for simplicity's sake we refer just to Dr. Phillips.

your credibility. Neither can you present the millions of documents and the scores of witnesses you were able to dig up in discovery: no sensible judge would tolerate it. Final pretrial orders encourage both sides to edit their scripts, peel away any pleading and discovery bluster, and disclose something approximating their real trial intentions to opposing counsel and the court. Toward those ends, the parties are often asked — as they were in this case — to specify the witnesses and exhibits, supply the proposed jury instructions, and identify the claims and defenses they actually intend to introduce at trial.

While pretrial orders entered earlier in the life of a case often deal with interstitial questions like discovery staging and motions practice and are relatively easy to amend as a result, a final pretrial order focused on formulating a plan for an impending trial may be amended "only to prevent manifest injustice." Fed. R. Civ. P. 16(e). Even that standard isn't meant to preclude any flexibility — trials are high human dramas; surprises always emerge; and no judge worth his salt can forget or fail to sympathize with the challenges the trial lawyer confronts. For all our extensive pretrial procedures, even the most meticulous trial plan today probably remains no more reliable a guide than the script in a high school play — provisional at best and with surprising deviations guaranteed. *See, e.g.*, *Sill Corp. v. United States*, 343 F.2d 411, 420 (10th Cir. 1965) (pretrial orders should not be treated as "hoops of steel"). At the same time, the standard for modifying a final pretrial order is as high as it is to ensure everyone involved has

sufficient incentive to fulfill the order's dual purposes of encouraging self-editing and providing reasonably fair disclosure to the court and opposing parties alike of their real trial intentions. *See, e.g.*, *Case v. Abrams*, 352 F.2d 193, 195 (10th Cir. 1965) ("A policy of too-easy modification not only encourages carelessness in the preparation and approval of the initial order, but unduly discounts it as the governing pattern of the trial." (quoting A. Sherman Christenson, *The Pre-Trial Order*, 29 F.R.D. 362, 371 (1961))). This court will review a district court's decision to amend or not to amend a pretrial order only for abuse of discretion. *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1222 (10th Cir. 2000).

We see nothing like that here. Dr. Phillips says that he was surprised when his co-defendants left him to stand trial and that the court was insufficiently sympathetic to his desire to revamp his trial strategy in light of the last-minute settlement. But can a partial settlement really come as a surprise in an age when virtually all cases settle in part or in whole, many on the eve of trial? Especially in multiparty litigation, where an incentive exists to break ranks, settle relatively cheaply, and leave others on the hook before the jury? The truth is, what happened in this case was hardly unforeseeable. Like many before him in multi-defendant cases, Dr. Phillips initially saw profit in presenting a united front with his co-defendants only to regret the decision later. United front defenses often present a tempting choice at the outset of multiparty cases and through discovery. Parties can pool their resources and efforts in joint defense arrangements.

Besides, no one likes to throw overboard someone else in the same boat. But the complications associated with this strategic choice often come home to roost as trial nears. An attractive partial settlement may be dangled before one defendant and not others. The settling defendant may get a good deal, replenish an opponent's litigation coffers depleted through exhausting pretrial litigation, and leave others exposed at trial for the bulk of the plaintiff's damages. Remaining defendants can be left wishing for a defense or evidence or witnesses forgone. If a remaining defendant's attorney counted on a colleague working for a settling party to do the heavy lifting at trial he may feel flat-footed when it comes to examining witnesses and arguing motions. Even if all the defendants do go to trial, failing to obtain experts and gather evidence to show contributory negligence by co-defendants can exact its toll and lead to regret. Multiparty litigation presents a variety of collective action problems and other strategic pitfalls and those Dr. Phillips encountered here are well known, not the stuff of surprise. *See, e.g.*, *Manual for Complex Litigation (Fourth)* § 13.21 (2004), 2004 WL 258728, at *1 (settling with one of many adverse parties on the eve of trial to weaken another party's position is "a common and legitimate litigation strategy"); Jerome Wahlert, *Contribution Between Joint Tortfeasors as Affected by Settlement with Injured Party by One or More Tortfeasors*, 17 A.L.R.6th 1 (2006) (observing that "virtually all" multi-defendant tort cases "involve potential contribution issues that can arise when one or more tortfeasors consider entering into

settlement agreements"); Geoffrey C. Hazard, Jr., *The Settlement Black Box*, 75 B.U. L. Rev. 1257, 1269-70 (1995) (noting that "the interests of multiple defendants in a specific level of settlement normally diverge").

It's hard, as well, to ignore the prejudice the other side can experience in these circumstances. Dr. Phillips effectively sought to force the plaintiff to prepare for an entirely different trial on a few days' notice. For the better part of two years the defendants presented a united front. Even in their final pretrial order submissions they didn't designate experts to suggest one or another of the codefendants acted unprofessionally. They didn't submit documents to prove such a claim. They didn't propose jury instructions asking that someone else be held accountable. The closest they came to suggesting contributory negligence was to prepare boilerplate blaming unspecified others for Mr. Shatwell's injuries. Beyond that, through the long months of discovery and into their final Rule 16(e) submissions, nothing. In these circumstances, the plaintiff and her lawyers had some reasonable expectations about what trial would look like and the sort of evidence they would — and would not — need. They knew they'd need to prove negligence by the defendants who chose to go to trial but they wouldn't have to worry about finger pointing between defendants; trial would present one set of challenges but not another.

It may be that the district court could have allowed Dr. Phillips to rejigger his defense at the last minute and afforded the plaintiff more time to prepare for

it. But we do not see why that outcome was mandatory. A district court does not abuse its discretion in holding a party to a long-scheduled trial and to the strategy he articulated though pleading and discovery and in the face of such obvious risks, especially when indulging an eleventh-hour strategic shift would mean either imposing prejudice on the other side or inviting more delay. So beware: when a fellow litigant settles on the eve of trial you can't bank on the right to claim surprise and rewrite your case from top to bottom. *See, e.g.*, 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1527.1, at 408-12 (2010) (explaining that a court may decline a motion to amend the pretrial order "if the evidence or issue was within the knowledge of the party seeking modification at the time of the pretrial conference"); *R.L. Clark Drilling Contractors, Inc. v. Schramm, Inc.*, 835 F.2d 1306, 1308 (10th Cir. 1987) (concluding that the district court did not abuse its discretion by holding the defendant to its prior "deliberate" choice not to pursue a particular legal theory).

Many of Dr. Phillips's remaining arguments echo his Rule 16 complaint and fail with it. For example, he challenges the court's evidentiary ruling at trial prohibiting him from asking one of the plaintiff's expert witnesses questions designed to elicit suggestions of negligence by the settling defendants. And he argues that the court erred when it refused to instruct the jury to apportion liability and damages between him and the settling defendants. But these

evidentiary and instructional complaints are no more than collateral attacks on the district court's Rule 16 ruling. When the court decided to hold Dr. Phillips to his self-declared trial plan presented only right before trial, that necessarily included the evidence he could submit and the issues he could put to the jury. *See Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1543 (10th Cir. 1996) ("We interpret the assertion of an issue not listed in the pretrial order as the equivalent of a formal motion to amend the order . . . ."). Dr. Phillips replies that, however that may be, the plaintiff's own questioning of her experts at trial "opened the door" to questions about the settling defendants' liability. But the district court saw no creak in the door and, after our own review of the transcript, we see no abuse of discretion in that assessment either. *See United States v. Burch*, 153 F.3d 1140, 1144 (10th Cir. 1998).

In places, Dr. Phillips seems to suggest that we should, on our own motion, reduce the jury verdict against him to account for the alleged misconduct of the settling parties. Even though the jury found him personally responsible for the particular damages it awarded, he suggests we should relieve him of some of that amount and (re)apportion it to those who settled before trial. But if that's what he seeks, we can no more oblige this request than his others. Under Oklahoma law governing this diversity dispute, it's not for courts to absolve defendants who elect to go to trial from damages a jury has lawfully found them personally liable for and attribute some of those sums to others *not* found liable: "a pretrial

- 9 -

settlement cannot be used as a credit where the ghost tortfeasor's liability was not submitted to the jury." *Pain v. Sims*, 283 P.3d 343, 345 (Okla. Civ. App. 2012) (discussing Okla. Stat. tit. 12, § 832(H), which permits set-offs only when a settling party is "liable" in tort for the same injury); *Nichols v. Mid-Continent Pipe Line Co.*, 933 P.2d 272, 280 (Okla. 1996). The proper way to handle the question of a settling defendant's liability is through a claim of contributory negligence put before the jury, something (again) Dr. Phillips sought only at the last moment when it was too late — revealing this argument to be no more than yet another collateral attack on the court's Rule 16 ruling.

What's left of this appeal at this point doesn't warrant extended discussion. Dr. Phillips complains about the district court's exclusion of evidence about Mr. Shatwell's use of tobacco and alcohol. But at trial the cause of Mr. Shatwell's cancer wasn't at issue, only the failure to warn him of its existence, so the evidence bore no relevance to the question of liability. Of course, if Mr. Shatwell's tobacco and alcohol use affected his prognosis or life expectancy, it would have become relevant to the question of damages. But, the district court found, Dr. Phillips failed to present competent evidence suggesting a material link between the amount of tobacco and alcohol Mr. Shatwell used and outcomes for the sort of cancer he had. In these circumstances, the court held that most inquiries about Mr. Shatwell's use of tobacco and alcohol would be more prejudicial than probative of any issue in dispute. *See* Fed. R. Evid. 403.

- 10 -

Appellate courts review evidentiary complaints only for abuse of discretion, and the degree of a district court's discretion in evidentiary rulings under Rule 403 is "particularly" wide. *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384 (2008). The district court here didn't overstep those bounds for the very reason it gave: Dr. Phillips failed to present competent evidence indicating a connection between Mr. Shatwell's conduct and his prognosis. That's not to say a link doesn't exist or couldn't be suggested with enough plausibility to permit or even require its admission in another case. Only that none of this happened in ours.

Affirmed.

13-7075, *Monfore v. Phillips, et al.*

**MORITZ,** Circuit Judge, concurring.

I agree with the majority's conclusion that Dr. Phillips has failed to demonstrate the district court abused its discretion in denying his motion to amend the pretrial order. But I write separately to emphasize my view that this issue presents a very close call under the circumstances of this case.

We have held that four primary factors should be considered in determining whether a district court has abused its discretion in denying a motion to amend the pretrial order. *See Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1222 (10th Cir. 2000) (listing four factors as (1) prejudice or surprise to opposing party; (2) ability of the opposing party to cure the prejudice; (3) potential disruption of trial; and (4) any bad faith of moving party); *Moss v. Feldmeyer*, 979 F.2d 1454, 1459 (10th Cir. 1992) (applying same factors).

Here, without separately considering these factors, the majority concludes the district court properly exercised its discretion in refusing to permit Dr. Phillips to amend the pretrial order. While our precedent doesn't compel rote application of these factors in every case, their application here reveals the outcome of this appeal isn't as one-sided as the majority implies.

For good reason, the first two factors focus on the impact of the amendment on the party *opposing* the motion. Yet the majority heavily focuses not on the prejudice to the plaintiff but the lack of surprise to Dr. Phillips. I would consider the "lack of surprise" factor as it applies to the party opposing the motion to amend, the plaintiff, in this case.

Here, the plaintiff maintained throughout discovery and in the proposed pretrial order that multiple defendants caused Mr. Shatwell's injuries. But the plaintiff then chose to enter into an "eve of trial" settlement with fewer than all defendants. As the majority recognizes, that partial settlement likely did not come as a surprise to Dr. Phillips "in an age when virtually all cases settle in part or in whole, many on the eve of trial." Maj. Op. at 5. But just as the partial settlement shouldn't have surprised Dr. Phillips, the plaintiff shouldn't have been surprised when Dr. Phillips reacted to the last-minute, partial settlement by seeking to compare the negligence of the settling defendants.

Moreover, our case law directs us to consider "prejudice" to the opposing party and the ability to cure that prejudice. Here, in seeking to amend the pretrial order, Dr. Phillips primarily sought to designate the plaintiff's lead expert witness, Dr. Huffman, as his own witness. Specifically, Dr. Phillips intended to elicit Dr. Huffman's opinions, as stated in his expert report and deposition, about the negligence of two settling co-defendants.

Clearly, since the plaintiff planned to prove the negligence of each defendant with Dr. Huffman's opinion testimony, the plaintiff was fully aware of the substance of Dr. Huffman's report and deposition regarding the negligence of the settling defendants. Notably, when Dr. Phillips repeatedly made these points at the hearing on the motion to amend, the plaintiff did not suggest otherwise. Under these circumstances, the plaintiff's claims of prejudice ring hollow. *See, e.g.*, *Moss*, 979 F.2d at 1458-59 (rejecting plaintiff's claim she was unfairly surprised by district court's decision to allow defendant to add one expert witness and expand upon testimony of another; noting both experts were

2

designated as witnesses in pretrial order, plaintiff received summaries of both doctors' reports before they testified, and plaintiff had opportunity to depose both experts before trial).

Likewise, the trial had not yet begun when Dr. Phillips sought to amend the pretrial order. *See Davey v. Lockheed Martin Corp.*, 301 F.3d 1204, 1212 (10th Cir. 2002) (stating, "[I]f the motion to amend is made *prior* to trial, no disruption of an ongoing trial is threatened." (emphasis in original)). Most significantly, Dr. Phillips did not seek any additional discovery and even the plaintiff does not suggest Dr. Phillips' proposed amendments would have necessitated additional discovery. Thus, contrary to the majority's conclusion, amendment of the pretrial order would not have significantly disrupted the order and efficiency of the trial. *See Moss*, 979 F.2d at 1459 (noting lack of disruption when expert reports available to plaintiff before experts testified).

Finally, although the district court did not find that Dr. Phillips acted in bad faith in seeking amendment of the pretrial order, the majority suggests Dr. Phillips acted in bad faith when he failed to anticipate the plaintiff's post-pretrial order settlement and cross-designate Dr. Huffman as a witness in the pretrial order. Admittedly, nothing prevented Dr. Phillips from cross-designating Dr. Huffman in anticipation that other defendants would settle. However, his failure to do so simply doesn't constitute bad faith.

Thus, consideration of the relevant factors demonstrates that the district court could just as easily have exercised its discretion to permit Dr. Phillips to amend the pretrial order. The majority appears to recognize as much, concluding, "It may be that the district court could have allowed Dr. Phillips to rejigger his defense at the last minute and

3

afforded the plaintiff more time to prepare for it." Maj. Op. at 8. Nevertheless, large portions of the majority opinion imply the only reasonable course was to deny the motion.

Our review of a denial of a motion to amend a pretrial order requires a case-specific, fact-specific inquiry. So while the majority warns defense counsel to "beware" the dangers of presenting a united defense in multi-defendant litigation, Maj. Op. at 8, litigants on both sides should also know that settling on the eve of trial could contribute to a finding of "manifest injustice" permitting amendment of the pretrial order under Rule 16(e). Nevertheless, in light of Dr. Phillips' double burden to demonstrate manifest injustice below and an abuse of discretion on appeal, I agree Rule 16(e) did not mandate that the district court grant the motion in this case. Consequently, I concur with the majority's conclusion that the district court did not abuse its discretion in denying the motion to amend the pretrial order.